AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. '21 MJ8764
)
Dark Gray Motorola )
Model: G Stylus )
IMEI: Unknown )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Manuel Vizcarra incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Border Patrol Agent Manuel Vizcarra
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 09/03/2021

_____
Judge's signature

City and state: El Centro, California     HON. RUTH BERMUDEZ MONTENEGRO, U.S. MAG. J.
Printed name and title

## ATTACHMENT A
PROPERTY TO BE SEARCHED

The following property is to be searched:

**TD-1:** Dark Gray Motorola
Model: G Stylus
IMEI: Unknown
Seized from Anthony Eugene FELDER
**(Target Device #1)**



**TD-2:** Blue Samsung
Model: Samsung Galaxy A50
IMEI: 359767/10/35332417
Seized from Christopher GOMEZ-Ponce
**(Target Device #2)**



**TD-3:**   Silver Samsung
Model: Samsung Galaxy Note8
IMEI: 358503083466566
Seized from Carlos MONTANO-De Arcos
**(Target Device #3)**



**TD-4:**   Black Motorola
Model: Motorola Moto C
IMEI: 358313083793356
Seized from Javier RAYA-Soto
**(Target Device #4)**



The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 16, 2021, up to and including June 16, 2021, and is limited to the following:

   a.   tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   b.   tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   c.   tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   d.   tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

   e.   tending to identify the user of, or persons with control over or access to, the Target Devices;

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Manuel A. Vizcarra, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**TD-1:** Dark Gray Motorola
Model: G Stylus
IMEI: Unknown
Seized from Anthony Eugene FELDER
**(Target Device #1)**

**TD-2:** Blue Samsung
Model: Samsung Galaxy A50
IMEI: 359767/10/35332417
Seized from Christopher GOMEZ-Ponce
**(Target Device #2)**

**TD-3:** Silver Samsung
Model: Samsung Galaxy Note8
IMEI: 358503083466566
Seized from Carlos MONTANO-De Arcos
**(Target Device #3)**

**TD-4:** Black Motorola
Model: Motorola Moto C
IMEI: 358313083793356
Seized from Javier RAYA-Soto
**(Target Device #4)**

as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Anthony Eugene FELDER (FELDER) for transportation of illegal aliens Javier RAYA-Soto, Carlos MONTANO-De Arcos, and Christopher Octavio GOMEZ-Ponce (the "Material

1

Witnesses") in violation of 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from FELDER and the Material Witnesses on or about June 15, 2021, incident to their arrest.[1] The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since February 2018, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement

---

[1] This Court had previously granted a Search Warrant for Target Device #1 on June 22, 2021 and the time limit for execution of that Search Warrant expired on July 6, 2021. The search of the Target Device #1 was not completed within that time frame. This Affiant is now requesting a Search Warrant for the phones seized from the Defendant and the Material Witnesses based on identical probable cause in order to continue the investigation and prosecution of this case.

2

of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.   Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.   The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

   d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On June 15, 2021, Border Patrol Agent Cesar Bermudez was assigned as Watch Commander for Swing shift. At approximately 9:18 p.m., Agents heard a broadcast over the agency radio for a "Be-On-The-Lookout" (BOLO) to agents assigned the El Centro Border Patrol Station. El Centro Sector Dispatch (KAK 840) stated that the El Centro Sector Intel Unit had advised them that a suspected alien smuggling conveyance was entering the El Centro Sector's area of responsibility. The suspected alien smuggling conveyance was described as a 2021 Toyota Tacoma, black in color, bearing California license plate 32646D3 and it was last traveling eastbound from the top of the grade near Inkopah on Interstate 8.

11. Record checks revealed the vehicle was registered to EAN Holdings (Enterprise Rental Car) from Tulsa, Oklahoma. From experience, BPA Bermudez knows that Transnational Criminal Organizations (TCOs) utilize rental vehicles for various reasons. Smugglers know that law enforcement agents cannot immediately identify the driver or occupants of the vehicle by requesting registration checks through law enforcement databases utilizing the license plate number. This helps the culpable parties from identification during surveillance. TCOs also know that if the rental car is seized in a criminal act it will be returned to the rental company. This tactic shields the TCO from financial loss when the vehicle is seized by law enforcement.

12. BPA Bermudez responded from the west desert of the El Centro Station Area of Operation and traveled north up to Interstate 8 in an attempt to locate the BOLO vehicle. BPA Bermudez positioned himself on the onramp of the eastbound lanes on Interstate 8 and Drew Road in order to observe the traffic travelling eastbound towards El Centro, California. As BPA Bermudez was positioned at this location, BPA Bermudez observed a dark newer model Toyota pickup truck matching the description of the BOLO

vehicle pass his location. Upon entering the eastbound lanes of Interstate 8 to confirm the license plate of the Toyota pickup truck that passed his location, BPA Bermudez observed that the pickup truck began to speed up.  As BPA Bermudez continued to attempt to position his vehicle behind the pickup truck in order to confirm the license plate, BPA Bermudez observed the pickup truck abruptly turn into the Jaime Obeso Memorial Rest Stop located approximately two (2) miles east of the Drew Road/Interstate 8 intersection.  The vehicle appeared to turn off its lights and park in a handicapped parking space next to several vehicles that were attached to trailers.  It should be noted that the pickup truck passed every available parking spot in front of the rest area and came to a stop in a disabled trailer parking spot on the far east side of the rest area.  The fact that the vehicle sped up when he passed his location, shut off his lights and drove the length of the parking lot away from the general motoring parking area made it apparent to BPA Bermudez that he was trying to avoid detection.

13. After BPA Bermudez observed a dark colored pickup truck enter the parking lot, BPA Bermudez entered the rest area shortly after in search of the vehicle. As BPA Bermudez got closer to the vehicle, BPA Bermudez could read the last three of the broadcasted license plate. BPA Bermudez positioned his fully marked Border Patrol Chevrolet Tahoe behind and to the right of the vehicle and never activated his lights or sirens.  BPA Bermudez advised KAK 840 that he had located the BOLO vehicle and that he would attempt to make a consensual encounter with the occupants.

14. BPA Bermudez approached the passenger side of the Toyota Tacoma, in full duty uniform with Border Patrol markings and insignia fully visible and identified himself as a United States Border Patrol Agent. BPA Bermudez questioned the driver, later identified as Anthony Eugene FELDER (FELDER) as to his citizenship. FELDER stated that he was a United States Citizen. BPA Bermudez then questioned the front seat passenger who was staring forward and would not make eye contact with BPA Bermudez when questioned about his citizenship.  The front seat passenger would not respond to BPA Bermudez's question.  While conversing with the front seat passenger, BPA Bermudez

|   |   |
|---|---|
| 1 | observed four additional passengers in the rear of the crew cab of the Tacoma. BPA Bermudez questioned each individual as to their citizenship and determined that Javier RAYA-Soto, Carlos MONTANO-De Arcos, Christopher GOMEZ-Ponce, [NAME], and [NAME] were citizens of Mexico illegally present in the United States. At this time, BPA Bermudez told FELDER to turn off the vehicle and to place his hands on the dashboard. FELDER complied with my request within minutes. At approximately 9:40 p.m., Border Patrol Agent Eric Blackburn arrived and placed FELDER under arrest for 8 U.S.C. Section 1324, Alien Smuggling. All five illegal aliens were placed under arrest for 8 U.S.C. Section 1325, Entry Without Inspection. All six individuals were transported to the Calexico Border Patrol Station for further processing. Once at the station, all the arrested subjects had their biometric and biographical information captured in the Department of Homeland Security processing systems |

15. On June 16, 2021, at the Calexico Border Patrol Station, BPA I. Vargas conducted a video-recorded sworn statement with Anthony Eugene FELDER. The statement was witnessed by BPA T. Lebaron. At approximately 1:33 a.m., Agent Vargas advised FELDER of his Miranda Rights in the English language. FELDER stated that he understood his rights and that he was willing to answer questions without an attorney present. FELDER stated he lives in Los Angeles County with his mother, Sharon. FELDER spent time with his girlfriend Jennifer and ran some errands with her before going home to engage in intimacy with his girlfriend. After spending time with his girlfriend FELDER left his house to drive towards San Diego. FELDER told agents he drove toward Highway 405, then Highway 5, and then Highway 8 to travel toward Arizona. FELDER drove on Highway 8 toward Arizona with the purpose of gambling at the Golden Acorn Casino located in San Diego east county. FELDER spent a few hours at the casino losing 400 dollars to gambling. Afterward, FELDER stated he drove east toward Arizona to reach Parker, Arizona, where he would visit his uncle who resides there. FELDER stated he drove for approximately 15 minutes and reached a group of individuals at the side of the road. FELDER stated he felt compelled to help the individuals at the side of the road and

admitted the group did not look like common individuals you typically find on the side of the road. FELDER explained the individuals were not wearing gear or using gear that resembled hikers nor did he observe any mode of transportation around the individuals which left him wondering where they originated from. FELDER stated he was warned from a prior detention he had with United States Border Patrol the previous week and knew they could possibly cause him trouble. FELDER elaborated he was arrested the prior week on the same charges of attempted alien smuggling and knew they could possibly be undocumented. FELDER stated that out of the kindness of his heart he decided to help no matter what the consequence and stopped to offer them a ride. FELDER attempted to communicate with the individuals and all of them only spoke Spanish. FELDER offered to take them to Arizona and offered to provide water.

16. FELDER admitted he was wrong in picking them up, with the knowledge from his prior experience that they could possibly be illegally present in the United States. FELDER also admitted that after his prior experience with US Border Patrol, the border was in proximity of the area that he was traveling in. FELDER admitted he was wrong and knew that his decisions could represent legal issues. FELDER was asked if he had planned and had the intent of committing this crime and stated he did not, but admitted he did wrong by picking them up, falling to the same issues as the prior week when he was arrested for the same crime. No further questions were asked and the video sworn statement concluded on June 16, 2021 at approximately 2:19 a.m

16. Material witnesses Javier RAYA-Soto, Carlos MONTANO-De Arcos, and Christofer GOMEZ-Ponce were presented with a Six-Pack photo lineup and were able to identify picture #1 as the male driver (Anthony Eugene FELDER). Material Witnesses Javier RAYA-Soto, Carlos MONTANO-De Arcos, and Christofer GOMEZ-Ponce stated they were going to pay between $8,000 and $9,000 to be smuggled into the United States

17. At the time of his arrest, FELDER's cellular phone was in plain view on top of the dashboard of the Toyota pickup truck when he was encountered. The phone was

collected by BPA E. Blackburn when he searched the rental vehicle and was seized incident to the arrest of FELDER.

18. Based upon my experience and investigation in this case, I believe that FELDER, the Material Witnesses and other persons, as yet unknown, were involved in an alien smuggling venture and that FELDER and the Material Witnesses used the Target Devices to coordinate with the as yet unknown persons to bring the aliens into the United States and/or transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the Target Devices, which may identify other persons involved in alien smuggling activities.

19. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on March 16, 2021, up to and including June 16, 2021, the day after the arrest of FELDER and the Material Witnesses.

## METHODOLOGY

20. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all

of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Device and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

/ /
/ /
/ /
/ /
/ /
/ /

## CONCLUSION

22. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that FELDER and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices were likely used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by FELDER, the Material Witnesses and others continues to exist on the Target Device. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Manuel Vizcarra, Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  3  day of September, 2021.

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A
PROPERTY TO BE SEARCHED

The following property is to be searched:

**TD-1:** Dark Gray Motorola
Model: G Stylus
IMEI: Unknown
Seized from Anthony Eugene FELDER
**(Target Device #1)**

 

**TD-2:** Blue Samsung
Model: Samsung Galaxy A50
IMEI: 359767/10/35332417
Seized from Christopher GOMEZ-Ponce
**(Target Device #2)**

 

**TD-3:** Silver Samsung
Model: Samsung Galaxy Note8
IMEI: 358503083466566
Seized from Carlos MONTANO-De Arcos
**(Target Device #3)**




**TD-4:** Black Motorola
Model: Motorola Moto C
IMEI: 358313083793356
Seized from Javier RAYA-Soto
**(Target Device #4)**




The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Device for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of March 16, 2021, up to and including June 16, 2021, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Devices;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.